(18 Misc. Rep. 708.)

### McGOWN v. McGOWN.

(Supreme Court, Special Term, New York County.   December, 1896.)

1. FOREIGN DIVORCE—VALIDITY—RESIDENCE OF MARRIED WOMAN.
    A woman whose husband is domiciled in New York cannot acquire a residence in a foreign state for the purpose of there obtaining a divorce.

2. SAME—SERVICE OF SUMMONS.
    The courts of New York will not recognize a divorce procured in another state, to which plaintiff went from her home, in New York, for that purpose, and summons was not served personally on defendant in such other state, and he did not voluntarily appear in the action.

3. SAME—CUSTODY OF CHILDREN.
    The custody of a child will be awarded to the father where the mother left him and the child, and went to another state, for the purpose of securing the divorce.

Action by Henry P. McGown, Jr., against Mary E. McGown, answering the complaint under the name of Mary E. Bell, for divorce.   Judgment for plaintiff.

Henry P. McGown, Jr. (Charles Blandy, of counsel), for plaintiff.
Earley & Prendergrest (E. C. James, of counsel), for defendant.

RUSSELL, J.   Since the views of the court, orally expressed at the trial of this action, counsel have submitted briefs, that of the plaintiff relating solely to the custody of the child.   The counsel for the defendant, however, again urges that judgment should go for the defendant, and that she should have the care of the child, notwithstanding the events disclosed upon the trial.   The parties were married in the year 1887, at the city of New York, and lived together until the 24th of April, 1896, without discord, so far as any evidence was given.   On that day the defendant left her home, in New York City, leaving a note for her husband, in which she stated that she was going to Minnesota with her brother and sister, and would be back in a few days.   She proceeded directly to Fargo, N. D., where she stayed for 90 days, and then, under the laws of that state, brought an action for divorce, on the

ground of cruelty, the summons in which was not served on the husband within the jurisdiction of North Dakota, nor did he appear in that action. Judgment was obtained in form dissolving the marriage, by the district court of North Dakota; and on the 24th of September, 1896, five months after she left her husband and child in the city of New York, she marries, in the state of North Dakota, a Mr. Bell. She returns to New York City immediately with Mr. Bell, and has since lived with him there as his wife.

It is strenuously maintained by counsel for the defendant that, because the defendant gained what the courts of Dakota were pleased to call a residence for 90 days, yet as they have recognized the wife's power to select her own domicile, and have taken jurisdiction of the status of the marriage, which did not occur within the borders of North Dakota, and pronounced judgment that the marriage be dissolved, therefore such judgment must be recognized even in the state of New York, where the marriage was contracted, and where the husband continuously resided. Counsel for defendant also maintains that even if this conclusion be not lawfully reached, and the North Dakota judgment of divorce be ineffective one hour before her second marriage, yet, in view of the usual rule that the marriage contract is governed by the laws of the state in which it is contracted, her second marriage being lawful in Dakota under its peculiar statutory laws, it must be valid everywhere, and even in the state of New York.

These claims are manifestly unsound. The domicile of the wife is the residence of her husband. While there are exceptional circumstances which justify the living apart from the husband against his will, and while a residence away from him may be gained by his consent, still for legal purposes, unless for sufficient cause, the wife's place is at the home of her husband and child, and she cannot acquire a foreign residence for the express purpose of freeing herself from the charge of violation of duty, and exempting herself from its obligations.

Nor, if she had gained a residence in the state of North Dakota, would her suit there have been effective. To sever the marriage tie by judicial force, the courts must gain jurisdiction by personal service of process upon the defendant, or by his voluntary appearance. While an erroneous judgment, which is erroneous only because of departure from just and regular procedure, can only be reviewed by motion in the court which pronounced it, or by appeal from the judgment, yet a usurpation of jurisdiction of the cause from the beginning can always be demonstrated collaterally to show that that judgment was not based upon any initiatory proceeding to which the defendant was a party other than by name. This must be especially the principle to be adhered to if the sacredness of the marriage relation is to be preserved in this country, and its force not to be cast off at the pleasure of either party, in a case where the wife, without warning of her purpose, leaves her home with the object of a temporary stay in a distant state

long enough to avail herself of its lax laws to procure a judicial dissolution of her marriage contract, for the purpose of marrying another, consummates that purpose as speedily as possible, and returns with the one for whom she has left her husband and child, to reside in the same city which was her former home, and all within a period of less than half a year. The law is too well settled to consider this defense further. Bell v. Bell, 4 App. Div. 527, 40 N. Y. Supp. 443, decided by the appellate division in this department, the opinion of Justice Follett citing the leading cases in this state and in the supreme court of the United States. When she went through with the form of a marriage on the 26th of September, 1896, to Bell, she was still the lawful wife of the plaintiff in this action. Her own wrongdoing, therefore, cannot render valid the judgment of a North Dakota court, which but for that act would have been wholly invalid.

Nor can I agree with the counsel for the defense that she should have the custody of the child, upon the plea that the only cause of complaint with reference to that child has been her absence from it for a few months. I have no doubt that she was, up to her departure, a tender and loving mother, and that she yearns for the companionship of her offspring, and would exert her utmost ability to cherish and properly educate him; nor is there any doubt but that, ordinarily, a mother's care is most useful for a child of tender years, and that she ought to have at least equal voice in his management and immediate supervision; but this mother now asks that the child, which she left to form an alliance with another man than its father and her husband, shall be forcibly taken from that father and husband, who has always performed his duty faithfully, both towards her and the child itself, to the household and parental guardianship of one alien to the husband and child, and for whose society she left her husband's home forever. The separation between mother and child was not the husband's doing. It was her own voluntary act, which cannot now be remedied, because of the persistence with which the steps were followed which consummated that separation. That husband is entirely innocent of all wrongdoing; has faithfully performed his duty to the mother and the child. The child is happy in the father's care, and no circumstances appear which would justify any court, compelled to decide by a necessity created by the act of the defendant, in taking a child from the custody of the innocent parent, and giving it to the one whose willful act of wrongdoing prevented the joint custody of both parents. I must therefore award the custody of the child to the plaintiff, leaving it to his discretion to allow the mother access at some future time, under such circumstances as he, with the knowledge of the situation, may think proper. The time may come, if sight of and conversation with the child should be denied to the mother, when this court may be willing to entertain an application by the mother for access to the presence of the child, and therefore the judgment will provide for the custody until the further order of the court. But it is not deemed by this court at pres-

ent probable that such a necessity for an application will arise, for time, which softens all asperities, will change perhaps the present attitude of the parties to one of partial forgetfulness of the causes which have brought about the separation, and may also bring a forbearance on the part of the husband in the assertion of his legal parental rights in their severest form.

Ordered accordingly.