(22 Misc. Rep. 307.)

## McGOWN v. McGOWN.

(Supreme Court, Special Term, New York County. January, 1898.)

DIVORCE—VISITING CHILD.

One from whom her husband has obtained a divorce should, for the benefit of their young son, custody of whom was given the father, and who is by the father kept ignorant of her existence, be allowed to occasionally visit him, there being nothing in her daily life, so far as shown, to render such visits injurious to him.

Action by Henry P. McGown against Mary E. McGown answering by name of Mary E. Bell.

Application by defendant, from whom plaintiff obtained a divorce (43 N. Y. Supp. 745; 46 N. Y. Supp. 285), for an order granting her access to their infant child.

Earley & Prendergast (E. C. James, of counsel), for the motion.
Henry P. McGown (Charles Blandy, of counsel), opposed.

RUSSELL, J.    The defendant applies under the reservation in the judgment for access to her child, which is now in the custody of her former husband, who has obtained a judgment of divorce against her.    The parties have been separated since the 24th day of April, 1896.    The charge of adultery upon which the judgment was entered was the cohabitation as a wife with Harry W. Bell, the defendant having married Bell, at Fargo, N. D., September 24, 1896, following the judgment of divorce just before obtained in North Dakota, on the ground of alleged cruelty of this plaintiff.    This action was tried the 18th day of September, 1896, and resulted in a judgment on January 18, 1897.    18 Misc. Rep. 708, 43 N. Y. Supp. 745; Id., 19 App. Div. 368, 46 N. Y. Supp. 285.    The child is a son nearly three years of age.    The application would be perhaps premature were this an ordinary case.    There are peculiar circumstances surrounding it.    Did the application rest solely upon the address to the favor of the court for the benefit of the divorced wife, I should now refuse it.    It is unnecessary to here repeat the former views of the court as to leaving the child of tender age in April, 1896, to proceed to a far western state, and obtain a divorce upon a fictitious plea of residence there, for the sole purpose of marrying a man she had contracted an affection for during her marital life with this plaintiff, and then returning to the locality of her former home in New York City.    But other considerations supervene, which are fairly displayed upon the record and the moving papers, although the application is apparently noticed as one for the benefit of the defendant.    This court, on the hearing of the argument, suggested to counsel that the main element of consideration was as to the rights or welfare of the child himself.    He is non sui juris.    Some authority has to protect his interests and his rights.    For substantially all the purposes of life, of guidance, culture, and education, he has been confided to the care of the innocent husband, and properly so.    If the attitude of that husband upon this motion had been that of willingness to repress the natural and just feelings of resentment he entertains for the wrongs he has suffered, and indicated a disposition that some time in the not far future the child might see its mother, this motion would have been denied for at least the present occasion. But the plaintiff frankly avows that he has kept from the child the knowledge of the mother's existence, and so intends for all the future, so far as he possibly can.    This is undoubtedly according to the dictate of human nature, and, so far as the mother is concerned, may be within the rights of the plaintiff.    But a judgment as to the welfare of the son, and a determination that he shall have no choice on the question whether he may or may not ever see or know the mother who brought him into this world, which is clouded to some

degree by natural feelings of indignation and resentment against the mother, may be erroneously exercised; and the situation, therefore, leaves the court no recourse but to say that either the child must be left without any knowledge of his mother until he is of an age to choose for himself, when long years of want of knowledge of her may have reduced the natural feelings to a faint sentiment, or must allow to him the sight and knowledge of a mother at such intervals as will not at all seriously impair the control and guidance of the father, and yet will gradually prepare the offspring by such knowledge of her existence and occasional sight of her face for a better ability of choice than he would be able to exercise as to what the future relations with her shall be. The decision thus resting upon this court, I cannot take the responsibility of denying such a privilege to the child. The sight or knowledge of the mother 10 or 15 years hence may be practically worthless. Such knowledge now and henceforth may be that which the child in after years would determine was what should have been accorded to him. No harm can result by such occasional sight. Nor is there any evidence before me that the daily life of this defendant is such as to injure that child by her occasional presence; his care, guidance, and control being still in all things left with the husband. I make the directions in general terms simply to see whether counsel may not agree upon more precise details. I think the mother should be admitted to the presence of the child at least four times a year until further order of the court. If that has to be done under the direction and in the presence of a referee to be appointed by this court, who shall have charge of the details, it can be so done; but it seems to me that all such details might be arranged without the necessity of the supervision of an officer appointed by this court, the child to remain during visits under the personal control of the husband, or of any friend whom he may choose to delegate for that purpose.

Ordered accordingly.